UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGE POOLE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  Case No.  4:04CV01284 AGF |
| CHRIS CASSADAY, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the joint motion for summary judgment filed by Defendants Chris Cassaday and the City of Cool Valley, Missouri ("City").[1] Plaintiff George Poole filed this action pro se against Cassaday, in his individual and official capacity as a City police officer; the City; and Gregory Bolin and Michael Bolin, doing business as Bolin Services, a towing service.

Petitioner, who is African-American, claims that his Fourth and Fourteenth Amendment rights were violated. He alleges in his verified complaint that on Sunday, September 5, 2004, at 10:00 a.m., as Plaintiff was driving away from the City, Cassaday stopped Plaintiff's car based upon racial profiling. He alleges that Cassaday ordered him out of his car, handcuffed him, placed him in the back of Cassaday's patrol car, and searched Plaintiff's car. Plaintiff alleges that Cassaday then returned to his patrol car, told Plaintiff that he had found no guns or drugs, and asked Plaintiff where he was

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

coming from, stating that he saw four tickets with the name George Wilson, whereas Plaintiff's "DOR papers"[2] showed the name George Poole. Plaintiff alleges that he told Cassaday that his name was George Poole and provided his age, address, and date of birth, but that Cassaday accused him of lying and took him to the police station and ordered his car towed. Plaintiff alleges that this encounter lasted two and one-half hours.

Plaintiff alleges that at the police station he was fingerprinted, photographed, and held on three warrants issued by Webster Groves, Missouri. Plaintiff claims that Cassaday's conduct violated Plaintiff's Fourth Amendment rights, and that "as a pretext" Cassaday wrote five citations against Plaintiff (failure to have proof of insurance, failure to wear a seat belt, driving while suspended, failure to have proper registration, and failure to have a state inspection sticker). Plaintiff asserts that at the police station he heard Cassaday tell Officer Jason Williams, "I wrote a black a ticket Friday," and that Cassaday did not treat Plaintiff with respect. Plaintiff also claims that the City violated his constitutional rights due to its failure to properly train its officers against racial profiling.

Plaintiff further alleges that Cassaday did not inventory the contents of his car before it was towed by the towing service owned by the Bolin Defendants, and that when he retrieved his vehicle, 50 compact discs and one spare tire were missing, in violation of his Fourth and Fourteenth Amendment rights.

---

[2] The Court assumes that this refers to Department of Revenue papers showing ownership of the vehicle.

Cassaday and the City have filed a joint motion for summary judgment. They argue that the uncontroverted facts show that Cassaday's stop of Plaintiff's car was not racially motivated but was based solely upon Cassaday's observation that Plaintiff was in violation of a city traffic ordinance. They further argue that as there was probable cause to stop Plaintiff's car, Cassaday's search of the car was reasonable in that Plaintiff only alleged that Cassaday searched the passenger compartment of the vehicle. The City argues that it cannot be held liable in this lawsuit because at the time of the incident, Cassaday had exceeded the requirements set by the Missouri Department of Public Safety for continuing education on the issue of racial profiling.

In support of their motion for summary judgment, the City and Cassaday have submitted the affidavits of Cassaday; Dale Grzeskowiak, Chief of Police for the City; and Williams. Cassaday attests that on the day in question, he stopped Plaintiff's car after observing that it did not have "proper license plates." Cassaday attests that he approached the car and asked Plaintiff for identification, and that Plaintiff told him that he did not have any identification, but that his name was Michael Wilson. According to Cassaday, Plaintiff then produced three traffic citations issued to Michael Wilson from the City of St. Louis as proof of identity. Cassaday attests that he then asked Plaintiff for his date of birth, and after Plaintiff gave a date inconsistent with the one on the traffic citations, Cassaday brought Plaintiff to the police station where fingerprinting revealed that he was George Poole, and that there were three warrants for his arrest issued by Webster Groves. Cassaday attests that he then issued Plaintiff the five citations noted above. Cassaday attests that he did not make any racist remarks or the specific remark alleged in the complaint, and that he did not execute the traffic stop or issue the

3

summonses based upon Plaintiff's race, but based solely upon the fact that Plaintiff had violated city ordinances. Defs.' Ex. C.

Williams attests that on the day in question, Cassaday did not make any racist comments to him, and specifically did not comment about having written a black person a ticket. Defs.' Ex. E. Chief Grzeskowiak attests that Cassaday completed eight hours of continuing education in both 2003 and 2004 on the issue of racial profiling, and that all police officers employed by the City completed all the continuing education required by the State, including on the issue of racial profiling. Defs.' Ex. B.

In response, Plaintiff states that Cassaday's search of his car included a search of the trunk. He reiterates that Cassaday failed to inventory Plaintiff's personal belongings, and asserts that the City should have procedures in place for this. Plaintiff also states that Cassaday asked questions unrelated to the traffic stop, and he reasserts that Cassaday's actions were based upon Plaintiff's race. The City and Cassaday reply that Plaintiff, in his response, merely restates the allegations in his complaint.

## DISCUSSION

Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Johnson v. Crooks, 326 F.3d 995,

1005-06 (8th Cir. 2003); Hott v. Hennepin County, Minn., 260 F.3d 901, 904 (8th Cir. 2001).

The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law." Id. at 248. When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S.574, 587 (1986).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Here, Plaintiff's complaint was verified, and allegations made in pro se litigants' verified pleadings are properly treated as satisfying affidavit requirements. See Hartsfield v. Colburn, 371 F.3d 454, 456 (8th Cir. 2004) (citing 28 U.S.C. § 1746).

Plaintiff's claims against the City and Cassady for the alleged violation of his constitutional rights arise under 42 U.S.C. § 1983, and not the Federal Tort Claims Act as noted in the complaint. In order to survive a motion for summary judgment under § 1983, Plaintiff must raise a genuine issue of material fact as to whether the alleged wrongful conduct by Cassaday, a state actor, deprived him of a constitutionally protected federal right. See Kuha v. City of Minnetonka, 365 F.3d 590, 596 (8th Cir. 2003).

Plaintiff's claim that Cassaday stopped his vehicle and arrested him on account of Plaintiff's race is a cognizable equal protection claim.  See Johnson, 326 F.3d at 999. To prevail on this claim, Plaintiff must prove both discriminatory effect and discriminatory purpose, that is, that "similarly situated individuals were not stopped or arrested." Id. at 999-1000.  The Court conlcudes that here Plaintiff has not refuted with competent evidence Cassaday's sworn statement that none of his alleged actions were based upon Plaintiff's race.  Plaintiff's personal opinion that he was stopped on account of his race is insufficient, even assuming that Cassaday made the statement to Williams attributed to him in the complaint.  See id. (arresting officer entitled to summary judgment because plaintiff's personal opinion that officer stopped her vehicle and arrested her on account of her race did constitute "affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive").  Nor does Plaintiff submit any evidence whatsoever that similarly situated white individuals with expired license tags and no driver's license were treated differently.  The record, thus, defeats Plaintiff's constitutional claim against Cassaday for racial discrimination.

Consequently, any claim against the City based upon Cassaday's alleged racial motivation is also precluded.  See Roach v. City of Fredricktown, Missouri, 882 F.2d 294, 298 (8th Cir. 1989) (no municipal liability under § 1983 where conduct of official did not cause a constitutional tort).  Moreover, the City has refuted Plaintiff's claim of inadequate training on racial profiling, and Plaintiff has not offered any evidence to counter the City's evidence.

Nor has Plaintiff disputed Cassaday's affidavit that Plaintiff was driving without proper license plates.  Accordingly, the record establishes as a matter of law that

Cassaday's traffic stop was constitutional.  See United States v. Searcy, 181 F.3d 975, 978 (8th Cir. 1999) ("An officer may stop a vehicle when he has probable cause to believe that a traffic violation, however minor, has occurred.").  Upon stopping Plaintiff's car, Cassaday was entitled to ask Plaintiff his identity.  Id.  Plaintiff does not directly dispute Cassaday's sworn statement that, upon approaching the car, he asked Plaintiff for identification; that Plaintiff told him he did not have any identification, but that his name was Michael Wilson; that Plaintiff produced traffic citations issued to Michael Wilson as proof of identity; and most significantly, that there were discrepancies between identifying information Plaintiff provided orally and information on the citations.  This, together with Plaintiff's failure to have proper license plates and to produce a driver's license, provided probable cause for Cassaday to arrest Plaintiff.  See, e.g., Wos v. Sheahan, 2002 WL 31863858, at *2 (7th Cir. 2002) (when motorist failed to produce valid driver's license during roadside safety check, officers had probable cause to believe he had violated the law and to arrest him).

It is undisputed that after Cassaday handcuffed Plaintiff and placed him in the patrol car, Cassaday searched Petitioner's car.  As the City and Cassaday argue, the arrest justified the search of the passenger compartment of Plaintiff's lawfully stopped vehicle following Plaintiff's arrest.  See New York v. Belton, 453 U.S. at 454, 460 (1981) (a warrantless search incident to a lawful arrest is limited to the passenger compartment of the vehicle); United States v. Beal, 430 F.3d 950, 954-55 (8th Cir. 2005); United States v. Dawdy, 46 F.3d 1427, 1430 (8th Cir. 1995); Williams v. Fanbrough, 2005 WL 1668218, at *2 (E.D. Mo. July 12, 2005).  The City and Cassaday maintain that they are entitled to summary judgment on Plaintiff's Fourth Amendment claim because Plaintiff alleges in his complaint only that Cassaday searched the passenger compartment of the car.

The City and Cassaday have adopted an overly narrow reading of Plaintiff's complaint, however, which alleges that Cassaday searched the "car." Furthermore, in response to the motion for summary judgment, Plaintiff specifies that Cassaday searched the trunk of Plaintiff's car, contrary to the statement of the City and Cassaday in their reply that Plaintiff merely restated, in his response, the allegations in his complaint. Perhaps because of their narrow reading of the complaint, the City and Cassaday, in their reply, do not dispute the fact that Cassaday searched the trunk of Plaintiff's car, nor do they offer any legal justification for his doing so. This Court, however, has an obligation to liberally construe Plaintiff's pro se complaint. See, e.g., Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). In light of this obligation and the summary judgment standard set forth above, the Court must assume at this point in the proceedings that Plaintiff has properly asserted that Cassaday searched the trunk of Plaintiff's car after handcuffing Plaintiff and placing him in the patrol car.

Inasmuch as it appears that the City and Cassaday had adopted an unduly narrow reading of the pro se complaint, the Court will allow the City and Cassaday ten days, to and including January 23, 2006, to address Plaintiff's claim that the search of his trunk violated his Fourth Amendment rights.[3] Plaintiff may have five days, to and including January 30, 2006, to respond.

Plaintiff's claim that Cassaday did not properly inventory Plaintiff's personal belongings in his car before it was towed does not state a claim under § 1983 because Plaintiff has an adequate state court remedy in an action for custodial negligence causing

---

[3] Police, of course, "'may not raise the inventory-search banner in an after-the-fact attempt to justify what was . . . purely and simply a search for incriminating evidence.'" Beal, 430 F.3d at 954 (quoting United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993)).

the loss of property, or unlawful conversion.  See Wagner v. Higgins, 754 F.2d 186, 191 (6th Cir. 1985).  Any claim Plaintiff has against Cassaday for actually taking any of the allegedly missing property fails for the same reason.  See Ali v. Ramsdell, 423 F.3d 810, 814 (8th Cir. 2005) (procedural and substantive due process claims that police officer stole plaintiff's property seized while executing a search warrant barred because a state law conversion claim provided her with an adequate remedy).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to add exhibits is **GRANTED**.  [Doc. #25]

**IT IS FURTHER ORDERED** that the motion of Defendants Chris Cassaday and the City of Cool Valley for summary judgment [Doc. # 33 ] is **GRANTED** in part. The motion is **GRANTED** as to Plaintiff's equal protection and due process claims against these Defendants.

**IT IS FURTHER ORDERED** that Defendants Chris Cassaday and the City of Cool Valley shall have up to and including **January 23, 2006**, to address Plaintiff's claim that the search of his trunk violated his Fourth and Fourteenth Amendment rights. Plaintiff shall have until **January 30, 2006** to respond.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of January, 2006.